KILPATRICK TOWNSEND & STOCKTON LLP
KOLLIN J. ZIMMERMANN (CA Bar No. 273092)
KZimmermann@kilpatricktownsend.com
R. CHARLES HENN, JR. (*pro hac vice* Granted)
chenn@kilpatricktownsend.com
JAMES A. TRIGG (*pro hac vice* Granted)
jtrigg@kilpatricktownsend.com
1801 Century Park East Suite 2300
Los Angeles, CA  90067
Telephone:   310-248-3830
Facsimile:   310-860-0363

Attorneys for Defendant
ADIDAS AMERICA

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| OSCAR TUBIO,<br><br>     Plaintiff,<br><br>v.<br><br>ADIDAS AMERICA, INC., AN OREGON CORPORATION; ADIDAS AG, A GERMAN STOCK CORPORATION; AND DOES 1 THROUGH 500, INCLUSIVE,<br><br>     Defendant. | Case No. 2:22-cv-06424-GW (PVCx)<br>*Judge: Hon. George Wu*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES OF ADIDAS AMERICA, INC. AND ADIDAS AG IN SUPPORT OF MOTION TO STAY**<br><br>Complaint Filed:   September 8, 2022<br>Hearing Date:       July 6, 2023<br>Hearing Time:      8:30 a.m.<br>Courtroom:           9D, 9th Floor<br>Trial Date:             November 7, 2023 |

For the reasons set forth herein, the adidas Defendants respectfully ask this Court to stay this action pending determination of key factual and legal issues in a prior-filed, parallel proceeding currently pending in Argentina.

## I. INTRODUCTION

On May 20, 2022, Plaintiff Oscar Tubio ("Tubio"), a citizen and resident of Argentina, filed a copyright infringement lawsuit against adidas Argentina S.A. ("adidas Argentina") in Argentina (the "Argentina Action"). Declaration of Gustavo Giay ("Giay Decl.") ¶ 2. The Argentina Action alleges that Tubio owns copyright in the graphic depicted below (the "CABJ Graphic"):



*Id.* Tubio asserts that, in the late 1970s, he created the CABJ Graphic for use by the Argentine soccer club Club Atletico Boca Juniors ("Boca Juniors"), who are based in Buenos Aires (and who are named in the Argentina Action, but not in this U.S. Action). *Id.* ¶¶ 2-3. The Argentina Action further alleges that adidas Argentina infringes Tubio's copyrights through the distribution of Boca Juniors-related apparel bearing the CABJ Graphic (the "adidas Apparel"). *Id.* ¶ 2.

If this sounds familiar, it is because it is. Approximately three months later, Tubio filed an essentially identical claim against adidas America, Inc. and adidas AG ("adidas Defendants") in this Court (the "U.S. Action"). Specifically, the U.S. Action alleges Tubio's ownership of copyrights in the *same* CABJ Graphic and infringement by the adidas Defendants through their reproduction and distribution of the *same* adidas Apparel at issue in the Argentina Action. (ECF No. 1.)

The copyright dispute between Tubio and adidas is fundamentally an Argentine one. It involves an Argentine plaintiff, an Argentine work, an Argentine soccer club, and apparel related to that Argentine soccer club which was produced

pursuant to a license between the Argentine soccer club and adidas Argentina. And, it involves threshold issues that are uniquely Argentine: under Argentina law, where (as here) there is no written agreement governing the creation of a work by one party for another, *see* Giay Decl. ¶ 3, the question of whether there has been a copyright assignment or a copyright license must be determined by the facts and circumstances of the case. *Id*. ¶ 6. Between the parties involved, it is possible to convey copyright, or to grant a broad license, in Argentina even in the absence of a written agreement. *Id*.

There are further complexities, also centered in Argentina. Boca Juniors wore a jersey incorporating the CABJ Graphic during its 1981 soccer season without objection from Tubio. *Id*. ¶ 4. In 2005, Boca Juniors obtained an Argentina trademark registration for its jersey design incorporating a graphic virtually identical to the CABJ Graphic. *Id*. ¶ 5. Tubio did not oppose this registration, and to date has not challenged it. *Id*. A copy of the Argentina registration certificate is attached to the Giay Declaration.

Under Argentina law, a party that owns a trademark registration has the right to exclusively use the registered mark unless the trademark registration is declared null and void by an Argentine federal court. *Id*. ¶¶ 7, 9. As Boca Juniors owns a valid Argentina trademark registration for a jersey design that incorporates a graphic virtually identical to the CABJ Graphic, and Tubio did not object to it, then Boca Juniors was within its rights to grant adidas Argentina and its affiliates the right to use its registered trademark in Argentina. *Id*. at ¶ 7.[1]

Assessment of these threshold issues go to the heart of Tubio's claims in the

---

[1] The Court might wonder, understandably, why use in Argentina is of concern to this action. The adidas Defendants maintain that the organization's Argentina sales are irrelevant to this proceeding, as the U.S. Copyright Act should reach only U.S. activity. However, Tubio aggressively has sought adidas's *worldwide* sales of products incorporating the CABJ Graphic, and evidently believes such sales are at issue in the U.S. case. Accordingly, adidas's rights to use the CABJ Graphic in Argentina are potentially of concern here, until this Court rules otherwise.

U.S. Action. If Tubio assigned copyright to Boca Juniors as a matter of Argentina law, or granted them a license sufficiently broad to allow merchandising, then he has no copyright to assert here. Even in the absence of a copyright assignment, there are complex issues under Argentina law regarding the interplay between Boca Juniors' *trademark* rights in the CABJ Graphic and Tubio's claimed *copyright*, which at minimum impact the permissibility of sales in Argentina, which Tubio claims are in play in the U.S. Action (although the adidas Defendants strongly disagree.) In the interests of justice and efficiency, the Court should exercise its discretion and stay the U.S. Action pending final resolution of these issues in the Argentina Action. The U.S. Action is approaching the end of its fact discovery period, and the parties are discussing depositions and potential motion to compel practice; then, possible expert discovery is just around the corner. Staying this action now will avoid substantial duplication and wasted resources by the parties and this Court, and will avoid potentially inconsistent rulings on identical legal and factual issues.

Further, allowing the Argentina court to resolve these issues allows Boca Juniors, a party to the Argentina Action but not to this one, to participate in the determination of these questions.

## II. THE COURT SHOULD STAY THE U.S. ACTION PENDING RESOLUTION OF CENTRAL ISSUES IN THE ARGENTINA ACTION

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The Ninth Circuit has explained:

> A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the

issues in such proceedings are necessarily controlling of the action before the court.

*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979); *see also Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952); *Landis*, 299 U.S. at 248, 254-55. The Ninth Circuit further held:

> It would waste judicial resources and be burdensome upon the parties if the district court in a case such as this were mandated to permit discovery, and upon completion of pretrial proceedings, to take evidence and determine the merits of the case at the same time as [a court in foreign jurisdiction] is going through a substantially parallel process.

*Leyva*, 593 F.2d at 864.

In determining whether to exercise its discretion to grant a stay, the court may consider: (1) the possible damage caused by granting a stay; (2) the hardship a party may suffer if required to proceed; (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay"; (4) "plaintiff's interest in proceeding expeditiously with the litigation"; and, (5) the convenience of the court in managing its cases and the efficient use of judicial resources. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *Jackson v. Rhino Ent. Co.*, No. CV 16-01668-BRO (PJWx), 2017 WL 8232807, at *5 (C.D. Cal. Feb. 22, 2017).

### A. Tubio Will Not Be Harmed If The U.S. Action Is Stayed Because Plaintiff Does Not Face Any Impending Harm

Tubio will not be significantly harmed if the U.S. Action is stayed. To show he would be harmed by staying the action, Tubio must show there is an impending harm that will be caused by the stay. *Rhino Ent. Co.*, 2017 WL 8232807, at *6. No such harm exists and, significantly, Tubio did not seek a preliminary injunction or temporary restraining order at the time the Complaint was filed. Surely, if Plaintiff was faced with an impending harm he would have filed for immediate relief. Mere

delay in recovering monetary damages is insufficient to preclude entry of a stay. *Liberty Surplus Ins. Corp. v. IMR Contractors Corp.*, No. CV 08-5773 JSW, 2009 WL 1010842, at *4 (N.D. Cal. Apr. 14, 2009) (holding that "a delay in recovering potential monetary damages was not sufficient harm to warrant a stay").[2]  Thus, this factor weighs in favor of a stay.

### B. The adidas Defendants Would Suffer Harm If Required To Proceed With The U.S. Action

Second, the adidas Defendants would suffer harm if they were required to proceed in the U.S. Action. The Argentina Action involves the same work (the CABJ Graphic) and the same accused products (the adidas Apparel). The key events surrounding the work's creation and its provision to Boca Juniors all took place in Argentina, and any relevant witnesses with regard to such events are in Argentina. It would be a waste of judicial resources and burdensome on the parties to proceed in a U.S. Action when Argentina is going through a similar process simultaneously. *See CMAX*, 300 F.2d at 269. Significantly, as discussed in the Giay Declaration submitted herewith, the Argentina Action involves factual complexities surrounding the transfer of the CABJ Graphic, and the interplay of Boca Juniors' trademark rights in that graphic and Tubio's asserted copyright. Given the approach Tubio has taken with discovery so far in this case,[3] the adidas Defendants would also be prejudiced by having to fight a "two-front war" litigating the same issues in multiple jurisdictions. *See Golden Eagle Ins. Corp. v. Drain Dr. Inc.*, No. 14-CV-3242-LHK, 2015 WL 1229323, at *5 (N.D. Cal. Mar. 17, 2015) (citation omitted) (noting a "high risk of prejudice" for having to defend two related

---

[2] adidas's understanding is that the adidas Apparel, which involves an Argentina soccer club and which was worn by the famous Argentine soccer player Diego Maradona has been sold principally (and unsurprisingly) in Argentina, so Tubio would only be delayed in obtaining relatively *de minimis* monetary relief from U.S. sales.

[3] Tubio has served discovery on Defendant adidas AG encompassing activities by adidas Argentina in Argentina.

lawsuits concurrently).

Moreover, assessing these issues without the involvement of Boca Juniors, a central participant in the background facts here, would greatly prejudice that entity's ability to be heard in the evaluation of these fundamental issues. This factor, therefore, favors entry of a stay.

### C. Staying The U.S. Action Would Simplify The Issues

A stay is warranted when it would facilitate simplifying issues, proof, and questions of law, thus resulting in the "orderly course of justice." *Cecilia LLC v. Azod*, No. 2:19-cv-9552-ODW (ASx), 2020 WL 9048758, at *1 (C.D. Cal. May 21, 2020) (citation omitted). If the U.S. Action were to continue, this Court would be required to evaluate the same facts and many of the same legal issues in play in Argentina. For example, does Tubio own valid copyrights in the CABJ Graphic? What rights under Argentina law did Tubio grant to Boca Juniors? What is the impact under Argentina law of Boca Juniors' trademark registration incorporating the CABJ Graphic, and how do they impact Boca Juniors' grant of rights to adidas Argentina? These issues simultaneously are being addressed by the court in the Argentina Action (notably, *with* the involvement of Boca Juniors).

When a foreign work is allegedly infringed in this country, United States law applies to determine whether infringement has occurred and if so, what remedies are available; this is a fundamental tenet of the Berne Convention copyright treaty, to which both the U.S. and Argentina belong. However, *copyright ownership* is decided according to the law of the country which has the closest relationship to the work. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 84, 90-91 (2d Cir. 1998). In determining which country has the closest relationship to the work, courts have considered the nationality of the author and the place of initial creation or publication as relevant factors. *Id.* (finding Russian law determines issues of copyright ownership where works at issue were created by Russian nationals and first published in Russia); *Lahiri v. Universal Music & Video Distrib.,*

*Inc.*, 513 F. Supp. 2d 1172, 1176 n.4 (C.D. Cal. 2007) (applying India's copyright laws to determine copyright ownership where work was created in India). To be clear, neither *Itar-Tass* nor *Lahiri* expressly reached the question of assessing the validity and scope of a copyright *transfer*; both were concerned with assessment of ownership in the first instance. A subsequent decision of the Southern District of New York noted that "issues of assignment would appear to be more analogous to ownership than infringement," but added "the jurisprudence concerning voluntary assignment of copyright … is admittedly less well developed." *Creazioni Artistiche Musicali, S.R.L. v. Carlin America, Inc.*, No. 14-cv-9270 (RJS), 2016 WL 7507757 at *3 (S.D.N.Y. 2016). The *Creazioni* court looked to the Restatement (Second) of Conflict of Laws and concluded that it was proper to apply Italian law in assessing the validity of a 1966 Italian copyright assignment. *Id.* at *4.[4]

Without a stay, it is entirely possible that the courts in the two proceedings will make factual or legal determinations that conflict with one another. A stay avoids that risk and permits the earlier-filed Argentina Action to proceed to completion before this Court needs to consider whether Tubio is entitled to any different relief in the U.S. Action. *See Rhino Ent. Co.*, 2017 WL 8232807, at *7; *Sentry Select Ins. Co. v. Quaid Harley Davidson, Inc.*, No. 5:20-cv-02145-JWH-KKx, 2022 WL 1681695, at *5 (C.D. Cal. Jan. 18, 2022). Thus, this factor also weighs in favor of staying the U.S. Action.

### D. A Stay Would Not Materially Impact Tubio's Purported Interest in Proceeding Expeditiously

Tubio waited several months before filing the U.S. Action after initiating the

---

[4] We note, further, that the *Itar-Tass*, *Lahiri*, and *Creazioni* courts each took the initiative to apply the foreign law themselves. However, in contrast to the present dispute, none of those cases appeared to involve **simultaneous** parallel actions in the foreign jurisdiction whose laws were implicated. Given the circumstances here, it is proper for this Court to let the Argentina tribunal decide upon the issues of assignment and license, and the impact of the Argentina trademark registration held by Boca Juniors.

Argentina Action in May 2022. In the U.S. Action, Tubio has taken no steps to seek expedited relief in the form of an injunction, and he has not sought to shorten the case schedule or expedite discovery. Thus, it is not clear that Tubio has *any* "interest in proceeding expeditiously with the litigation." *Rhino Ent. Co.*, 2017 WL 8232807, at *5; *see also CMAX*, 300 F.2d at 268. Nevertheless, even if such an interest existed, Tubio is likely to obtain whatever relief he is entitled to through his prosecution of the Argentina Action, such that a stay of the U.S. Action would have no material impact on the timing of his relief. *See, e.g.*, *CMAX*, 300 F.2d at 268-69 (noting that a stay would only delay the recovery of monetary damages, and thus was not "a strong showing in support of [plaintiff's] assertion that it will suffer irreparable damage and a miscarriage of justice"). This factor is at worst neutral, but clearly does not weigh against a stay.

### E. A Stay Would More Efficiently Use The Court's Resources

Staying the U.S. Action will promote judicial economy by avoiding duplication of effort and potentially inconsistent rulings with the earlier-filed Argentina Action. *See Am. Hotel & Lodging Ass'n v. City of Los Angeles*, No. CV 14-09603-AB (SSx), 2015 WL 10791930, at *3 (C.D. Cal. Nov. 5, 2015). A verdict for either party in the Argentina Action will greatly expedite resolution of the U.S. Action, because it will resolve issues such as whether Tubio owns valid copyrights in the CABJ Graphic and whether the adidas Apparel infringes those copyrights.[5] Specifically, the extent to which Tubio assigned or licensed rights in the CABJ Graphic has not been resolved in the Argentina Action and should be determined by the laws in the work's country of origin before the U.S. Action may proceed. *See*

---

[5] Argentina is a signatory to the Berne Convention. *Berne Convention for the Protection of Literary and Artistic Works*, September 9, 1886, as revised at Stockholm on July 14, 1967, 828 U.N.T.S. 221. Argentina copyright law is similar to U.S. copyright law in that Argentine courts have found that, for works to be protected, they must be expressed in a tangible form and must contain a minimum degree of originality. Further, in principle, substantial similarity with a work is enough to prove copyright infringement in Argentina.

*Creazioni Artistiche Musicali*, 2016 WL at *3-5.

An Argentine court need not offer the same, or as favorable, remedies to be an adequate forum to hear these issues. *See MGA Ent. Inc. v. Deutsche Bank AG*, No. CV 11-4932-GW(RZx), 2012 WL 12892902, at *8 (C.D. Cal. Feb. 27, 2012); *Leuck v. Sundstrand Corp.*, 236 F.3d 1137, 1144 (9th Cir. 2001); *see also Piper Aircraft Co v. Reyno*, 454 U.S. 235, 247 (1981). Moreover, given that Tubio brought action in this court after the Argentina Action had been progressing for a period of time, continuing to exercise jurisdiction here would promote forum shopping. *See MGA Ent. Inc.*, 2012 WL 12892902, at *8. Therefore, the final factor also weighs in favor of a stay.

## III. CONCLUSION

For the foregoing reasons, the adidas Defendants respectfully request that this court stay the further proceedings in the U.S. Action at least until there is a ruling in the Argentina Action on the crucial issues of the scope of rights granted by Tubio to Boca Juniors, and regarding the impact of Boca Juniors' trademark rights in the design at issue in this case on its ability to license use of this design in Argentina.

DATED: June 2, 2023            Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/James A. Trigg*
KOLLIN J. ZIMMERMANN
R. CHARLES HENN, JR. (*pro hac vice Granted*)
JAMES A. TRIGG (*pro hac vice Granted*)

Attorneys for Defendants
Adidas America, Inc. and adidas AG